IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

WILLIAM BRUCE REED, )
)
     Plaintiff, )
)
v. ) CIVIL ACTION NO. 96-AR-2462-M
)
THE HEIL COMPANY, )
)
     Defendant. )

MEMORANDUM OPINION

The court has before it the Motion for Reconsideration filed by plaintiff William Bruce Reed. The court will expand somewhat on its order of October 26, 1998 with which plaintiff finds fault.

I. <u>ADA claim</u>

Plaintiff objects to the portion of the findings and recommendation in which Magistrate Judge Paul W. Greene concluded that plaintiff is not disabled under the ADA. Plaintiff has now submitted an affidavit from his vocational expert stating that plaintiff has lost access to twenty-seven percent of the jobs in the open labor market. Plaintiff argues that under the language of *Haysman v. Food Lion, Inc.*, 893 F. Supp. 1092 (S.D. Ga. 1995), he has lost access to a broad range of jobs. In *Haysman*, however, the plaintiff was ineligible for ninety percent of the jobs in the work force. 893 F. Supp. at 1101.

Plaintiff further argues that he was qualified for and capable of performing the jobs of welding, chipper/grinder, buyer and scheduler without any accommodation.

Dr. Decker placed certain restrictions on Reed which he never removed. Although plaintiff testified that he would have tried to perform a welder's job "if they told me," he also testified that "in August of '94 Dr. Decker said he couldn't never release me to go back to my regular job [as welder]." (Reed March 1997 deposition, p.209).

Plaintiff has also presented several exhibits which were not previously presented with the motion for summary judgment or in opposition thereto in an attempt to "fix" his case by showing the subsequent job vacancies. Even though plaintiff has shown subsequent welder and grinder vacancies, as discussed in the findings and recommendation, defendant Hrynkiw testified in his deposition, after being shown documents which set forth the requirements for task performance, that he had concerns about Reed's physical ability to perform the jobs of welder and grinder. Further, while plaintiff has submitted a memo showing a vacancy for the position of buyer, this position required qualifications which Reed has not shown he possessed. *(See* plaintiff's Exhibit D to Objection). The buyer position required specific computer skills and excellent mathematical, analytical and communication skills. Further, a B.S. degree in Business Administration was desired.

Plaintiff also argues that the job he was performing in pre-delivery was posted after his termination. (*See* Exhibit B which was previously submitted as defendant's Exhibit 15 Mills in support

2

of the motion for summary judgment). Previously, defendant also submitted defendant's Exhibit 13 Mills. Both defendant's exhibits 13 and 15 Mills were reports for the job title of pre-delivery. Ms. Mills testified that the difference in the two reports was that defendant's exhibit 13 was the job she observed at the time of her job analysis while defendant's exhibit 15 was the job that plaintiff was doing when he was laid off. She further testified that the job description in exhibit 15 was based solely upon what plaintiff identified as the various facets of his job at that time. Mills, p.75-76, defendant's Exhibit 13). Mills includes a physician's statement dated May 21, 1997 that the pre-delivery job was within plaintiff's physical abilities "with modifications" -- specifically "as long as weight restrictions per FCE." The General Job Description in defendant's Exhibit 13 is as follows:

> The Predelivery worker has two primary functions:
> 
> 1)  To clean the truck, both inside and out, in preparation for delivery.
> 2)  To test drive the truck to insure stability or identify any faulty areas that need to be fixed prior to delivery.
> 
> The predelivery worker will grease all fittings on the body of the truck, and use an air hose to clean out the interior of the chassis. The worker is responsible for performing an oil sample test by performing the particle counter test.

3

The General Job Description of defendant's Exhibit 15 (i.e., the job plaintiff had performed as described by plaintiff) is:

> The worker's main function is to inspect the chassis' using an inspection checklist to ensure that everything is functioning properly and is ready for delivery.

The job description of the pre-delivery assistant advertised on July 18, 1995 (plaintiff's Exhibit A) is:

> This job will include those responsibilities required to prepare finished units for delivery. Washing, greasing, cleaning, detailing, etc. This person will assist in pre-delivery and run/test depending on the work load.

The job description of the position which was available July 18, 1995 is for the pre-delivery position described in defendant's Exhibit 13 rather than the pre-delivery position performed by plaintiff as described in defendant's Exhibit 15.

II. Retaliatory discharge claim

Plaintiff objects to the magistrate judge's conclusion that Alabama law requires an employee to be willing and able to return to his pre-injury job in order to maintain a claim for retaliatory discharge. Plaintiff's position is that what is required is that plaintiff be willing and able to work at all following an on-the-job injury. Plaintiff relies on *Leak Stop, Inc. v. Keenon*, 705 So.2d 479 (Ala. Civ. App. 1997). *Leak Stop* involved an active campaign to convince Keenon to drop his workers' compensation claim

4

consisting of numerous telephone calls telling Keenon to get rid of his lawyer and drop his workers' compensation claim or he would not have a job. Following the barrage of telephone calls, Keenon was terminated on May 31, 1995, prior to his July 24, 1995 release to return to light duty work. Keenon was unemployed for approximately three month after his release to begin light duty work; thereafter, for approximately four months he worked at various maintenance and painting jobs until March of 1996 when he was employed by one of Leak Stop's competitors, presumably doing the same type of work-- pipeline repair-- that he had performed at Leak Stop. The appellate court concluded that "Keenon's testimony and his work history after he was terminated from LSI show his willingness and ability to return to work."

Plaintiff, in his belated affidavit (plaintiff's Exhibit E submitted with objection), apparently attempts to show his "ability" by stating in his affidavit the he has been a delivery driver since September of 1997. This does not establish that plaintiff was able to perform the duties of welder (or any other position at Heil). Further, plaintiff had already been on light duty at Heil for almost two years when terminated in contrast to the plaintiff in *Leak Stop* who, following his release to return to work was unemployed or employed at jobs other than his pre-injury job for approximately seven months.

5

Despite plaintiff's assertions to the contrary, this case is analogous to the situation presented in *Hammock v. Ryder Dedicated Logistics, Inc.*, 716 So.2d 215 (Ala. Civ. App. 1998) in which the plaintiff was working as a cargo handler when he was injured. Ryder created a light duty position for plaintiff which he performed from February 1996 until July 4, 1996 when plaintiff was informed the light duty position had been eliminated. In May 1996, Hammock was determined to be at maximum medical improvement and his restrictions were permanent. Although Hammock stated that he told Ryder that he wanted to return to his position of cargo handler, Hammock was unable to return to that position due to his medical restrictions. Similarly, Reed was employed as a welder when he was injured and he was allowed to work "light duty" for approximately two years at which time Heil discontinued light duty work at all of its facilities. Reed was advised in January 1994 that his light duty assignment was not permanent. (Reed, March 1997, p.1230). When the light duty assignment was terminated, Reed was not able to return to his previous position as welder. Despite plaintiff's attempt to characterize his light duty position in pre-delivery as a transfer, Heil never reassigned plaintiff to a permanent position in that department and was under no obligation to create a light duty permanent position for Reed.

It does not appear from the memorandum opinion entered by Judge Propst in *Culver v. The Heil Company*, CV 96-PT-2478-M

6

(settled on November 10, 1998) that he considered the "willing and able" element of retaliatory discharge. Rather, he focused on whether the reason given for termination was pretextual. Because plaintiff in this case did not show that he was able to return to work, Magistrate Judge Greene correctly concluded that plaintiff failed to establish a *prima facie* case of retaliatory discharge. It was therefore not necessary to address whether the elimination of the light duty progress was a legitimate reason for termination or whether it was pretextual.

The findings and recommendation process is always going to create this "second round" opportunity to present new evidence and argument. Plaintiff has not produced evidence which would be sufficient to deny summary judgment to defendant. Plaintiff's Motion for Reconsideration will be denied.

DONE this the 17th day of November, 1998.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE